UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                               **CASE NO. 3:14cr24-MCR**

**SILAS K. WARD,**

    **Defendant.**

_____/

## ORDER

Defendant Silas K. Ward has been charged with failing to update his sex offender registration, as required by the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901-16962, in violation of 18 U.S.C. § 2250(a).[1] Following a bench trial,[2] the Court requested additional briefing by the parties. In response, the Government filed a legal brief and the Defendant filed a Motion for Judgment of Acquittal. The Court has carefully reviewed the matter and is prepared to rule.

**Stipulated Facts**

The parties have stipulated to the following facts:

    Defendant Silas K. Ward was convicted of two counts of Aggravated Sexual Battery in the State of Tennessee on or about June 22,1993. As a result, he was required to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA") and maintain said registration. Ward registered as a sex offender with the Florida Department of Law Enforcement ("FDLE") starting in approximately 2002 after moving to Pensacola, Florida, where he resided. Ward was advised in writing and was aware prior to 2010 that he had to report any out-of-state travel of five (5) or more days within forty-eight (48) hours of beginning the travel or else he would be in violation of Florida law.

---

[1] Ward, a convicted sex offender, is charged with failing to update and keep his registration current between February 1, 2010, and February 6, 2014.

[2] Ward waived his right to a jury trial in writing; the Government consented; and the Court approved the waiver. *See* Fed. R. Crim. P. 23(a).

On February 5, 2014, the United States Marshals Service ("USMS") obtained information that Ward had purchased a roundtrip flight to Honduras departing the next day and returning February 27, 2014.  On February 6, 2014, USMS deputies arrested Ward in Miami, Florida, after he boarded his scheduled flight to Honduras but before the plane had departed.[3]

When Ward completed his biannual sex offender registration form on February 3, 2014, he did not report any intended out-of-state travel, nor did he otherwise notify authorities of his travel to Honduras prior to his attempted departure.  Immigration and Customs Enforcement ("ICE") records and a review of Ward's passport after his arrest showed that Ward had also traveled out of the country on two prior occasions:  between on or about January 29, 2010, and February 11, 2010, to Mexico; and between on or about September 5, 2013, and September 26, 2013, to Costa Rica and Nicaragua.  Ward did not report either trip to authorities either before or after the travel occurred.

**Applicable Law**

This case involves the complicated interplay between federal criminal law, a federal civil regulatory scheme, and state law sex offender registry requirements.  In 2006, Congress enacted the Adam Walsh Child Protection and Safety Act "to protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child victims."  Pub. L. 109–248, 2006 HR 4472, 120 Stat. 587 (July 27, 2006).  In relevant part, the Adam Walsh Act created SORNA and in doing so established "a comprehensive national system for the registration of [sex] offenders."[4]  42 U.S.C. § 16901; *see also United States v. W.B.H.*, 664 F.3d 848, 851-52 (11th Cir. 2011), *cert. denied*, 133 S. Ct. 524 (2012).  Additionally, the Adam Walsh Act amended the federal criminal code in relation to sex offender registration by imposing criminal liability for a failure to register or to update a registration as required by SORNA.  *See* 18 U.S.C. § 2250(a).  In particular, the criminal statute provides that whoever (1) is required under SORNA to register; (2) is a sex offender either (A) as defined under SORNA by reason of a federal conviction or (B)

---

[3] The Government is not relying on Ward's intended travel in 2014 as a basis for conviction.  (*See* doc. 29 n.4).

[4] SORNA was enacted "in response to the vicious attacks by violent predators" against certain named child victims, with the purpose of protecting the public against sex offenders. 42 U.S.C. § 16901.

who travels in interstate or foreign commerce; and (3) "knowingly fails to register or update a registration as required by [SORNA], shall be fined under this title or imprisoned not more than 10 years, or both." *Id.*

SORNA establishes the "[r]egistry requirements for sex offenders" in 42 U.S.C. § 16913, which provides:

> (a)  In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> * * *
>
> (c)  Keeping the registration current
>
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.[5]

A separate section of SORNA, 42 U.S.C. § 16914(a), requires sex offenders to provide the following information for inclusion in the sex offender registry:

> (1) The name of the sex offender (including any alias used by the individual).
>
> (2) The Social Security number of the sex offender.
>
> (3) The address of each residence at which the sex offender resides or will reside.
>
> (4) The name and address of any place where the sex offender is an employee or will be an employee.

---

[5]  Section 16913 also requires the Attorney General "to specify the applicability of the requirements of [SORNA] to sex offenders convicted before [its] enactment" and to provide rules for registering those unable to comply with the initial registration requirements, *see* § 16913(d), and mandates that each jurisdiction provide a criminal penalty for sex offenders' failure to comply with the requirements SORNA, *see* § 16913(e).

(5) The name and address of any place where the sex offender is a student or will be a student.

(6) The license plate number and a description of any vehicle owned or operated by the sex offender.

(7) Any other information required by the Attorney General.[6]

42 U.S.C. § 16914(a).

When enacting SORNA, Congress granted the Attorney General broad interpretive and implementing authority. *See* 42 U.S.C. § 16912(b) (stating the Attorney General "shall issue guidelines and regulations to interpret and implement" SORNA).[7] The Attorney General has complied with this directive by issuing final guidelines that are intended to "provide guidance and assistance to covered jurisdictions . . . in implementing the SORNA standards in their registration and notification programs." *National Guidelines* ("Guidelines"), 73 Fed. Reg. 38030, 38044-38070 (July 2, 2008).[8] Recognizing that SORNA establishes "a set of *minimum* national standards and sets a floor, not a ceiling, for jurisdictions' programs," *id.* at 38046 (Part II B), the Attorney General has characterized the Guidelines as the "blueprint" for a "cooperative effort" between jurisdictions and responsible federal agencies to achieve "the SORNA goal of creating an effective and comprehensive national system of registration and notification" for sex offenders, *id.* at 38045 (Part I).

Relevant to this case, the Guidelines provides:

Temporary Lodging Information (§ 114(a)(7)): Sex offenders who reoffend

---

[6] Section 16914(a)(7) is referred to as SORNA's "catchall provision."

[7] The Eleventh Circuit has noted that "Congress's use of the word 'shall' indicates that Congress was issuing a directive to the Attorney General," *United States v. Madera*, 528 F.3d 852, 857 (11th Cir. 2008), and according to the Sixth Circuit, this provision "unambiguously authorized the Attorney General to make substantive rules on how to implement SORNA," *United States v. Stevenson*, 676 F.3d 557, 564 (6th Cir. 2012).

[8] The Guidelines constitute substantive rulemaking with the force and effect of law. *See, e.g., United States v. Lott*, 750 F.3d 214, 217-19 (2d Cir. 2014) (discussing the retroactivity issue); *United States v. Bridges*, 741 F.3d 464 (4th Cir. 2014) (concluding the Attorney General's Guidelines defining the term the "conviction" "can and do have the force and effect of law," because Congress left a gap in SORNA by not specifically defining the term, citing *Stevenson*, 676 F.3d at 565); *see also United States v. Dean*, 604 F.3d 1275 (11th Cir. 2010) (concluding that the Attorney General's interim rule making SORNA retroactive was valid APA rulemaking).

> may commit new offenses at locations away from the places in which they have a permanent or long-term presence. . . . The authority under SORNA § 114(a)(7) is accordingly exercised to provide that jurisdictions must require sex offenders to provide information about any place in which the sex offender is staying when away from his residence for seven or more days, including identifying the place and the period of time the sex offender is staying there.

*Id.* at 73 Fed. Reg. at 38056 (Part VI, titled "Required Registration Information"). The Guidelines's implementation procedures also provide instructions to jurisdictions for keeping the registration current, stating, "[e]ach jurisdiction in which a sex offender is registered as a resident must require the sex offender to report immediately changes in vehicle information [and] temporary lodging information," among other things. *Id.* at 38065-66 (Part X). At the end of Part X, the Guidelines explains that SORNA's three-day in-person update requirement, contained in § 16913(c), "relates to changes in name, and to changes in residence, employment or school attendance" and clarifies that "[t]he means by which sex offenders are required to report other changes in registration information discussed in this Part [of the Guidelines] are matters that jurisdictions may determine in their discretion." *Id.* at 38067. Consistent with this language, Florida expressly requires sex offenders to notify officials within 48 hours of travel and temporary lodging away from their residence lasting five or more days.[9] *See* Fla. Stat. § 775.21.

**Discussion**

The parties have stipulated that a conviction in this case requires proof beyond a reasonable doubt of the following elements:

First:    that Ward is required to register under the Sex Offender Registration and Notification Act (SORNA); and

Second:    that he traveled in interstate or foreign commerce; and

Third:    that he knowingly failed to register or update a registration as required by SORNA.

*See* 18 U.S.C. § 2250(a). There is no dispute that the stipulated facts establish the first

---

[9] According to the Government, Florida's temporary lodging requirement was already in effect at the time SORNA was enacted.

and second elements. The only remaining question then is whether, under the third element, Ward failed to update his registration *as required by SORNA* by not reporting his out-of-country travel on two occasions–between January 29 and February 11, 2010, and between September 5 and September 26, 2013.

The Government argues that SORNA requires sex offenders to update their registration when changes in temporary lodging occur, such as Ward's travel out of the country, based on SORNA's catchall provision, *see* 42 U.S.C. § 16914(a)(7), which authorizes the Attorney General to add "other information" to the list of information sex offenders must provide to the registry. According to the Government, because the Attorney General is generally authorized to implement SORNA pursuant to § 16912(b) and is specifically authorized to expand SORNA's registration requirements by adding "other information" to the list of registry requirements pursuant to the catchall provision, Ward's failure to provide temporary lodging information as required by the Guidelines was a "failure to update as required by SORNA." In response, Ward argues he is entitled to an acquittal because, while he may have violated Florida's registration requirements by not reporting his temporary travel, nothing in SORNA requires sex offenders to update their registration based on a change in temporary lodging, and the Guidelines's language is directed at the state jurisdictions implementing SORNA, not sex offenders. Thus, Ward argues he did not fail to update his registration "as required by SORNA" for purposes of federal criminal liability under § 2250(a). After careful consideration of the law and the parties' arguments, the Court agrees with Ward.

SORNA does not explicitly define the term "update" or include a section referencing a "duty to update" but speaks instead in terms of registering[10] and "keeping the registration current." 42 U.S.C. § 16913(a). Specifically, Section 16913(a) requires sex offenders to keep their registration current in each jurisdiction where they reside, work or attend school, and § 16913(c) defines how that is to be done. Under subsection (c), "[a] sex offender shall, not later than 3 business days after each change of name, residence, employment,

---

[10] Ward's initial registration is not at issue in this case.

or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 42 U.S.C. § 16913(c) (titled, "Keeping the registration current").  Thus, according to the statute's plain text, a sex offender's duty to update and keep the registration current under § 16913(c) is triggered only when there has been a change in certain specifically listed sex offender information–namely, a change in name, residence, employment, or student status. *See United States v. Lafferty*, 608 F. Supp. 2d 1131, 1142 (D.S.D. 2009) ("The disclosure edicts found in § 16913(c) are limited to those instances where there is a change in the offender's status, whether by way of a new or different name, home, job or school situation.").  If a change in one of these items occurs, the duty to update arises under SORNA, and the sex offender then must report to the jurisdiction and update *all changes* in the required registry information.  *See* 42 U.S.C. §§ 16913(c) & 16914(a) (defining information sex offenders must include in the registry).

The Government has not cited, nor has the Court found, any language in SORNA specifically instructing sex offenders to update their registration at a particular time to reflect changes in temporary out-of-state or out-of-country travel or lodging.[11]  Although not entirely clear, it appears the Government does not take issue with the above construction of § 16913(c) but instead urges the Court to consider the "full context" of SORNA and argues particularly that, when reviewed together, the catchall provision of § 16914(a)(7) (which authorizes the Attorney General to add "other information" to the list of what SORNA requires to be on the registry) and the Guidelines (which cites the catchall provision as authority for requiring temporary lodging information to be reported) create a separate and additional SORNA duty on sex offenders to update the "other information" required by the Attorney General's Guidelines.  The Court rejects this argument because it reads too much into the catchall provision and is inconsistent with the plain language and structure of SORNA.

---

[11] Although the Government initially cited the statute's requirement for keeping the registration current (set forth in § 16913(c)) in support of its position in this case, it acknowledged during Ward's trial that the temporary lodging requirement is "not in the SORNA as it was enacted and codified."

Case No. 3:14cr24-MCR

Granted, the catchall provision gives the Attorney General broad discretion to define "other information" that sex offenders must provide for inclusion in the registry, but there is no textual basis in that provision or elsewhere in SORNA for requiring a sex offender to update the registry based on a change in that "other information." As noted above, § 16913(c) details how sex offenders are to keep their registration current and requires sex offenders to update "all changes in the information required" whenever there is a change in name, residence, employment, or student status. *See* 42 U.S.C. § 16913(c). The full list of "information required" to be provided by sex offenders for inclusion on the registry is outlined in a separate SORNA provision (*see* 42 U.S.C. § 16914(a)), and it requires sex offenders to provide a number of things–their name, residence, employment, student status, social security number, license plate number, a description of any vehicle owned, and "any other information required by the Attorney General" (the catchall provision), such as the temporary lodging information at issue in this case.[12] 42 U.S.C. § 16914(a). By contrast, in § 16913(c), Congress specifically identified only four items (i.e., name, residence, employment, and student status) from § 16914(a)'s more expansive list when prescribing how sex offenders are to keep their registration current. Congress easily could have added other items from § 16914(a)'s list to § 16913(c), or articulated a duty to update in § 16914(a), but chose not to do so. This leads the Court to conclude that neither the other items listed in § 16914(a) nor "other information" required by the Attorney General such as the temporary lodging information triggers SORNA's duty to update for purposes

---

[12] Although the Guidelines directs "jurisdictions" to require sex offenders to provide this temporary lodging information, the Court will assume, at least for purposes of this case, that Ward is required to provide temporary lodging information pursuant to § 16914(a)(7), the catchall provision, whenever there is a SORNA duty to update because the Guidelines identifies this as "other information" to be included on the registry, and the Attorney General expressly invoked the authority of the catchall provision when identifying temporary lodging as required information. *See National Guidelines*, 73 Fed. Reg. at 38056, Part VI (titled "Required Registration Information"). *Cf United States v. Belaire*, 480 F. App'x. 284, 287-88 (5th Cir. 2012) (unpublished) (noting that the temporary lodging requirement is "in a list of information that jurisdictions must require sex offenders to provide," and concluding that, although it is "one of the items of other information that the Attorney General has required jurisdictions to direct sex offenders to provide," the regulation "does not create an additional basis for criminal liability under § 2250").

Case No. 3:14cr24-MCR

of "keeping the registration current" under § 16913(c). The well-established canon of statutory construction that Congress is presumed to act intentionally when it includes a term in one section of a statute but omits it in another, applies. *See, e.g., Gozlon–Peretz v. United States*, 498 U.S. 395, 403–404 (1991); *In re Piazza*, 719 F.3d 1253, (11th Cir. 2013) ("[T]he general rule of thumb [is] that, when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *United States v. Singh*, 291 F.3d 756, 762 (11th Cir. 2002) (applying the statutory rule of construction that inclusion of one implies exclusion of others, *unius est exclusio alterius*). Thus, because SORNA contains an express instruction to sex offenders in § 16913(c) on how to keep their registration current, which intentionally omits some items listed in § 16914(a) as a trigger for that duty, the Court must decline the Government's invitation to divine a new SORNA duty to update for sex offenders. Also noteworthy is that § 16913(c) has no catchall provision specifically authorizing the Attorney General to require sex offenders to update when there is a change in "other information," and the Government has not identified any interpretive gap in SORNA that allows the Attorney General to impose on sex offenders a new duty to update; the express gap in the § 16914(a)(7) catchall only permits the Attorney General to define the required information for the registry and does not authorize creation of a new SORNA duty to update for sex offenders.[13] Consequently, to accept the Government's argument that a change in temporary lodging triggers a SORNA duty to update separate from § 16913(c) would blur the distinction Congress has drawn between the list of information SORNA requires sex

---

[13] While a change in "residence" triggers SORNA's duty to update all changes, the Government has not argued that the term "residence" is ambiguous and should be construed as including temporary lodging. This is most likely because to do so would be inconsistent with SORNA's express language, which defines the term "resides" as the place a person "habitually lives." 42 U.S.C. § 16911(13). In light of that definition, the term "residence" in § 16913(c) cannot be read to include a temporary lodging requirement. The Guidelines supports this interpretation. *See* 73 Fed. Reg. at 38061-62 (explaining that the scope of the phrase "habitually lives" should be understood to include places where the sex offender lives with some regularity).

offenders to provide to the registry, *see* 16914(a), and SORNA's specific directions to sex offenders on how to keep their registration current, *see* § 16913(c).

This distinction was not lost on the Attorney General. In the Guidelines, the Attorney General does not purport to impose on sex offenders a new "SORNA" duty to update. The Attorney General identifies temporary lodging information in Part VI as "other information" required to be included on the registry, citing the catchall provision as authority, *see National Guidelines*, 73 Fed. Reg. at 38056, Part VI (titled "Required Registration Information"), and in Part X outlines instructions *to jurisdictions* for keeping this "other information" current when changes occur, *see id.*, 73 Fed. Reg. at 38066, Part X (titled, "Keeping the Registration Current"). Thus, in exercising his discretionary and interpretive authority, the Attorney General maintains a clear distinction between defining information required to be included on the registry and instructing jurisdictions on how they keep the information current. The Attorney General's own comments implicitly recognize that the temporary lodging information could otherwise become out of date if jurisdictions did not require updates because a change in this "other information" does not trigger SORNA's § 16913(c) duty for sex offenders to report and update. *See id.* Consistent with this view, the Attorney General advises jurisdictions that they have discretion to determine the means by which sex offenders must report changes in this type of "other information," though SORNA requires in-person reporting for a change in name, residence, work or student status. *Id.*, 73 Fed. Reg. at 38067. Thus, in Part X the Attorney General plainly directs "*each jurisdiction*" to require sex offenders to immediately report changes in temporary lodging, *id.*, 73 Fed. Reg. at 38066 (emphasis added), presumably because SORNA does not.[14]

---

[14] In the Guidelines, the Attorney General also recognized that there are a number of SORNA provisions designed to ensure that changes in registration information are reported promptly, discussing 42 U.S.C. §§ 16913(a) & (c), 16919(b), 16921(b)(3), 16928, and referencing § 16916. *National Guidelines*, 73 Fed. Reg. at 38065-66. In this case, the Government has relied on only § 16913(a) & (c) and the catchall provision of § 16914(a)(7), and has identified no other SORNA provision as supporting Ward's conviction. Moreover, the indictment charged Ward with failing to update by not keeping the registration current, which

This distinction between what SORNA requires sex offenders to provide for inclusion in the registry and what the Guidelines requires of *jurisdictions* is not inconsequential when considering criminal liability. *See United States v. Belaire*, 480 F. App'x 284, 287-88 (5th Cir. 2012) (unpublished).  For instance, in *Belaire*, the Fifth Circuit cautioned, "[i]t is important to differentiate the requirement to report temporary lodging information [contained in the regulations] from the obligation to update residency changes [in SORNA]."[15]  *Id.* at 287.  This Court agrees.  Jurisdictions may or may not choose to implement the Attorney General's requirements.[16]  Sex offenders, on the other hand, are not free to choose and must comply with both state and federal law. *See United States v. Brown*, 586 F.3d 1342, 1349 (11th Cir. 2009) ("[A] sex offender is not exempt from SORNA's registration requirements merely because the jurisdiction in which he is required to register has not yet implemented SORNA."), *cert. denied*, 559 U.S. 1108 (2010).  Sex offenders are subject to federal criminal prosecution, however, only for their failure to update "as required by [SORNA]."  18 U.S.C. § 2250(a).  Thus, the Court finds that a provision of the Attorney General's Guidelines directing jurisdictions, which may or may not implement it, to require sex offenders to update temporary lodging information cannot be the basis for imposing federal criminal liability against a sex offender for failing to update as required by SORNA.[17]  Indeed, as stated, the Attorney General has acknowledged that

---

expressly implicates the language of § 16913(c) ("Keeping the registration current").  Therefore, the Court has no occasion to address any other SORNA provision.

[15] Again, this Court has presumed for purposes of its analysis that both the Guidelines and SORNA require sex offenders to provide temporary lodging information for inclusion on the registry as "other information" but recognizes that there is some uncertainty on this issue in that, despite the Attorney General's reliance on the catchall provision in Part VI of the Guidelines, the language used is directed at the jurisdictions, as opposed to sex offenders.  It is not necessary in this case to resolve that issue. (S*ee supra* Note 12).

[16] Jurisdictions risk losing a portion of federal law enforcement funding if they choose not to comply. *See* 73 Fed. Reg at 38047 (Part II E); see also 42 U.S.C. §§ 16924-16925.

[17] Similarly, the fact that a jurisdiction follows the Guidelines and requires sex offenders to provide temporary lodging information to the registry within a certain period of time, as Florida has done, does not transform the state law requirement into a SORNA duty to update,  *See generally United States v. Bridges*,

in certain respects, the Guidelines may exceed the requirements of SORNA,[18] and in the Attorney General's own words, the Guidelines are a mere "blueprint" for jurisdictions to use in implementing it. 73 Fed. Reg. at 38045. In § 2250, Congress did not criminalize a sex offender's failure to update as required by the Attorney General or as required by state law, but *as required by SORNA*, and "[t]aking account of SORNA's overall structure, [there is] little reason to doubt that Congress intended § 2250 to do exactly what it says." *Carr v. United States*, 560 U.S. 438, 456 (2010).

Accordingly, because Ward had no change of name, residence, employment, or student status, the Court concludes he had no SORNA-defined duty to appear in Florida and report "all changes" in his registry information to keep his registration current under § 16913(c). Ward's Motion for Judgment of Acquittal (doc. 28) is therefore **GRANTED**.

**DONE AND ORDERED on this 14th day of November, 2014.**

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

741 F.3d 464, 468 (4th Cir. 2014) (recognizing courts "begin with the undisputed premise that federal law, rather than state law, controls the question of what constitutes a conviction under SORNA"). Although Congress undoubtedly has the power to adopt the laws of a state as federal law, *see United States v. Kebodeaux*, 133 S. Ct. 2496, 2502 (2013), and Florida law plainly requires sex offenders to update their registration within 48 hours before departing on a trip of five days or more, Congress did not adopt this state law as part of SORNA. The Supreme Court has noted that "SORNA punishes violations of its requirements instead of violations of state law." *Id.* at 2505 (internal marks omitted). Thus, as the Government acknowledges, a conviction in this case must be based on a violation of SORNA's requirements, not Florida law. Nonetheless, the Government attempts to distinguish *Belaire* on grounds that the state laws in question in that case, Texas and New York, did not require a sex offender to report temporary out of state travel. This is a distinction without a difference. The *Belaire* court found that the temporary lodging requirements did not create an additional basis for criminal liability under § 2250, and added as an aside, "[i]n fact, neither Texas nor New York has implemented these regulations as they relate to their own sex offender registries." *Belaire*, 480 F. App'x at 288. Interestingly, the Government's argument actually illustrates why it would be incorrect to hold Ward criminally liable under SORNA for a requirement that is not imposed uniformly by the federal law itself but rather is dependent on a particular state's implementation of it.

[18] The Government's Supplemental Bench Trial Brief quotes the Attorney General's own comments in Supplemental Guidelines acknowledging that the international travel requirements "go beyond those stated in SORNA itself." (Doc. 29, at 4) (quoting 76 Fed. Reg. 1630, 1633 (Jan. 11, 2011)).

Case No. 3:14cr24-MCR